1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT
7                       FOR THE DISTRICT OF ARIZONA
8
9   Ernie Pete Ortega,                    )      CV-07-02063-PHX-MHM(JCG)
                                          )
10              Petitioner,               )      **REPORT AND RECOMMENDATION**
                                          )
11  vs.                                   )
                                          )
12                                        )
    Dora Schriro, et al.,                 )
13                                        )
                Respondents.              )
14                                        )
                                          )
15  _____     )
16

17        Petitioner Ernie Pete Ortega, presently incarcerated at the Arizona State Prison

18  Complex, Eyman Unit, in Florence, Arizona, has filed a Petition for Writ of Habeas Corpus

19  pursuant to 28 U.S.C. § 2254.  Pursuant to the Rules of Practice of this Court, this matter was

20  referred to Magistrate Judge Guerin for Report and Recommendation.  Before the Court are

21  the Petition for Writ of Habeas Corpus ("Petition") (Doc. No. 1), Respondents' Answer to

22  Petition for Writ of Habeas Corpus ("Answer") (Doc. No. 7) and Petitioner's Reply to

23  Respondent's Answer for Writ of Habeas Corpus ("Reply"). (Doc. No. 8.)  The Magistrate

24  Judge recommends that the District Court deny the petition.

25                  **FACTUAL AND PROCEDURAL BACKGROUND**

26        Petitioner was convicted by a jury of one count of reckless manslaughter, a class two

27  felony, on October 22, 2002.  (Answer, Exhibit A.)  On February 21, 2003, Petitioner was

28  sentenced to 13 years in prison.  (Answer, Exhibit B.)  The evidence presented to the jury

established that Petitioner shot the victim while "messing around" with a gun.[1] (Answer, Ex. I.)   Petitioner admitted to a friend that he was responsible for the shooting. (*Id.*)  After shooting the victim, Petitioner dragged the victim out of Petitioner's residence to a nearby vacant lot.  Blood was found on Petitioner's clothing, and boxes of ammunition, a holster, a spent shell casing and the victim's backpack were found in Petitioner's residence. (*Id.*)

Petitioner filed a direct appeal in which he presented a single argument: that Petitioner could not have acted recklessly because he did not point the gun at the victim when firing it. (Answer, Exhibit C.)  The Arizona Court of Appeals affirmed Petitioner's conviction on December 4, 2003, finding that there was sufficient evidence to support the   reckless manslaughter conviction. (Answer, Exhibit C.) On January 20, 2004, the order and mandate in Petitioner's direct appeal was issued.  (Answer, Exhibit C.)

On January 9, 2004, Petitioner filed a timely Notice of Post-Conviction Relief. (Answer, Exhibit D.)  Counsel for Petitioner filed a Notice of Completion on April 21, 2004, averring that there were no meritorious claims on which to base a claim for relief under Rule 32.  (Answer, Exhibit E.)  Petitioner filed a *pro se* petition ("First Rule 32 Petition") in the Maricopa County Superior Court on June 4, 2004, claiming that (1) there was insufficient evidence to support the jury's guilty verdict, (2) the trial court abused its discretion when it denied Petitioner's motion for mistrial, and (3) Petitioner received ineffective assistance of counsel when trial counsel: (a) allowed key witnesses to lie to the jury, (b) failed to call any defense witnesses, (c) failed to present letters written by the victim as evidence, (d) failed to obtain DNA evidence, (e) failed to argue that Petitioner was denied counsel during questioning following his arrest, (f) failed to present evidence of the victim's criminal history, (g) failed to properly investigate the case and (h) failed to afford Petitioner an opportunity to review all of the evidence. (Answer, Exhibit F.)  The trial court denied relief. (Answer, Exhibit  I.)  Petitioner filed a petition for review of the trial court's decision in the

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct."

Arizona Court of Appeals; the Court of Appeals summarily dismissed the petition on July 14, 2005. (Answer, Exhibit K.)

On August 19, 2005, Petitioner filed a successive Notice of Post Conviction-Relief, which was later amended ("Second Rule 32 Petition"), in which he argued that he received ineffective assistance of trial counsel when trial counsel (a) failed to obtain DNA evidence and (b) represented Petitioner despite a conflict of interest. (Answer, Exhibit L.) The Superior Court dismissed Petitioner's Second Rule 32 Petition as untimely on October 18, 2005. (Answer, Exhibit M.) The Petitioner did not seek review of the dismissal.

On November 1, 2006, Petitioner filed a pleading captioned as an "Appeal Petition for Writ for Habeas Corpus" in the state court, in which he presented six claims for relief: (1) various state actors, including the prosecution and defense counsels and several judges, conspired to deprive Petitioner of his constitutional rights, (2) the prosecutor engaged in prosecutorial misconduct, (3) trial counsel was ineffective because he represented Petitioner while operating under a conflict of interest, (4) Petitioner received ineffective assistance of counsel at sentencing, (5) Petitioner received ineffective assistance of appellate counsel and (6) Petitioner received ineffective assistance of counsel during post-conviction relief proceedings. (Answer, Exhibit N.) The trial court treated the pleading as a petition pursuant to Rule 32 ("Third Rule 32 Petition") and dismissed it as successive. (Answer, Exhibit O.) The Arizona Court of Appeals denied review of the dismissal on September 19, 2007. (Answer, Exhibit P.)

Petitioner filed his federal Petition on November 1, 2006. The Petition presents three claims for relief:

**Ground 1:** The prosecutor engage in prosecutorial misconduct before and during trial;

**Ground 2:** Petitioner received ineffective assistance of counsel when (a) trial counsel represented Petitioner despite a conflict of interest, (b) trial counsel failed to present DNA evidence, (c) trial counsel failed to object to perjured testimony, (d) trial counsel failed to present mitigating evidence during sentencing, (e) appellate counsel only filed an opening

brief on Petitioner's behalf, (f) appellate counsel failed to timely raise claims on appeal and (g) post-conviction relief counsel filed a Notice of Completion of Post-Conviction Review.

**Ground 3:** State actors including the prosecution and defense counsels, State Superior and Appeals Court judges, police detectives, court reporters and the records department conspired against Petitioner.

**DISCUSSION**

**A.   Timeliness**

Federal petitions for writ of habeas corpus filed by state prisoners are governed by a one-year statute of limitations period. *See* 28 U.S.C. § 2244(d)(1).  The statute of limitations begins to run from the latest of: (1) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (2) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (3) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.  28 U.S.C. § 2244(d)(1).

Of these possible starting dates, only the first and second are relevant to the present action.  Petitioner does not assert a new right recognized by the Supreme Court that grants retroactive review, nor does Petitioner allege that his Petition is predicated on newly-discovered evidence that could not have been discovered earlier through the exercise of due diligence.

Petitioner's judgment became final on January 20, 2004, when the Arizona Court of Appeals concluded direct review by issuing its order and mandate.  Under ordinary circumstances, the one year statute of limitations would have began to run on that date. However, before the order and mandate were issued, Petitioner filed a timely Notice for

1    Post-Conviction Relief on January 9, 2004.  When a properly filed state post-conviction

2    relief request is pending, the proscribed one year statute of limitations may be tolled.  *See* 28

3    U.S.C. § 2244(d)(2).  Since Petitioner properly filed his Notice for Post-Conviction Relief,

4    the one year statute of limitations was tolled until the request for relief was resolved.[2]

5    Accordingly, the statute of limitations was tolled until the judgment against Petitioner

6    became final on July 14, 2005, when the State Court of Appeals denied review of the trial

7    court's post-conviction order.  With the one year statue of limitation triggered, Petitioner had

8    until July 13, 2006 to file his federal habeas petition.  *See* 28 U.S.C. § 2244(d)(1).  Petitioner

9    did not file his federal habeas petition until November 1, 2006, over three months after the

10   statute of limitations period expired.  Thus, the Petition is time barred.

11        Petitioner argues that the statute of limitations should not begin to run from the date

12   that his judgment became final because he claims he was impeded from filing his federal

13   Petition when the Arizona Department of Corrections lost his legal files, thereby

14   unconstitutionally depriving him of access to the courts.  A prisoner's constitutional right of

15   access to the courts may be violated if the prisoner suffers an actual legal injury.  *See Sands*

16   *v. Lewis*, 886 F.2d 1166, 171 (9th Cir.1989).  In this case, however, Petitioner's legal files

17   were alleged to be lost in approximately May, 2007.[3]  Thus, even if the lost legal files

18   constituted an "impediment to filing an application created by State action in violation of the

19   Constitution or laws of the United States," 28 U.S.C. § 2244(d)(1), the impediment did not

20   occur until well after Petitioner's statute of limitations had run.

21

22   _____

23        [2] Petitioner's filing of his Second and Third Rule 32 Petitions did not toll the statutory
     period.  Tolling only applies when properly filed applications for state post-conviction relief are
24   pending.  *See* 28 U.S.C. § 2244(d)(2).  Petitioner's Second Rule 32 Petition was dismissed as
     untimely, and his Third Rule 32 Petition was dismissed as successive; therefore, they were not
25   "properly filed" and did not continue the statutory tolling. *See Pace v. DiGuglielmo*, 544 U.S.
     408, 408-09 (2005); *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).

26        [3] In his Reply, Petitioner states that he was detained at the Maricopa County Sheriff's
     Office from April, 2005 until March, 2007, and that he was transferred from the Sheriff's Office
27   to the Arizona Department of Corrections "one to two months later."  (Reply, pg. 7.)  It was
     during this transfer that Petitioner claims his legal files were lost. Petitioner filed a grievance
28   appeal related to the lost legal files on August 17, 2007.  (Petition, Ex. A.)

1    Equitable tolling may be available even after the statute of limitations period has

2    expired if "extraordinary circumstances beyond a prisoner's control make it impossible to file

3    a petition on time." *Calderon v. United States Dist. Ct. (Beeler)*, 128 F.3d 1283, 1288 (9th

4    Cir. 1997), *overruled on other grounds, Calderon v. United States Dist. Ct.*, 163 F.3d 530

5    (9th Cir. 1998) (en banc).   Equitable tolling is appropriate only if extraordinary

6    circumstances beyond a prisoner's control make it impossible to file a petition on time, and

7    is unavailable in most cases. *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002)

8    (quoting *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir.1999) and *Beeler*, 128 F.3d at 1288).

9    Petitioner argues  in his Reply that he is entitled to equitable tolling of the statute of

10   limitations because (a) ADOC lost his legal files and (b) Petitioner suffers from a mental

11   illness.  For the reasons previously stated, Petitioner's missing legal files are not relevant to

12   the timeliness of his federal Petition.  A threshold showing of mental incompetency may

13   equitably toll the statute. *Calderon,* 163 F.3d at 541.  However, because the Court in

14   Sections B and C concludes that the claims presented in the Petition are either not properly

15   exhausted or without merit, whether the statute of limitations should be equitably tolled is

16   a moot issue.

17   **B.    Exhaustion**

18          **i.    Legal Standard**

19          Ordinarily, before a federal court will consider the merits of a habeas petition, the

20   petitioner must exhaust the remedies available to him in state court.   28 U.S.C.

21   §2254(b)(1)(A);  *Picard v. Connor*, 404 U.S. 270, 275 (1971).  First enunciated in *Ex parte*

22   *Royall*, 117 U.S. 241 (1886), the exhaustion requirement is designed "not to create a

23   procedural hurdle on the path to federal habeas court, but to channel claims into an

24   appropriate forum, where meritorious claims may be vindicated and unfounded litigation

25   obviated before resort to federal court." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992).

26   The requirement is grounded in principles of comity, and reflects a desire to protect state

27   courts' role in the enforcement of federal law. *Castille v. Peoples*, 489 U.S. 346, 349 (1989)

28   (citation omitted).  The requirement is also based on a pragmatic consideration that fully

1    exhausted claims will usually be accompanied by a complete factual record once they reach

2    federal court. *Rose v. Lundy*, 455 U.S. 509, 519 (1982).

3          A petitioner must exhaust his claims by fairly presenting them to the state's highest

4    court, either through a direct appeal or collateral proceedings, before a federal court will

5    consider the merits of habeas corpus claims pursuant to 28 U.S.C. § 2254. *See Rose*, 455

6    U.S. at 519. A petitioner must have also presented his claim in a procedural context in which

7    its merits will be considered. *See Castille*, 489 U.S. at 351. A habeas petitioner's claims may

8    be precluded from federal review on exhaustion grounds in either of two ways. First, a claim

9    may be procedurally defaulted in federal court if it was actually raised in state court but

10   found by that court to be defaulted on state procedural grounds. *See Coleman v. Thompson*,

11   501 U.S. 722, 729-30 (1991). Second, the claim may be procedurally defaulted in federal

12   court if the petitioner failed to present the claim in a necessary state court and "the court to

13   which the petitioner would be required to present his claims in order to meet the exhaustion

14   requirement would now find the claims procedurally barred." *Id.* at 735 n.1. If a petitioner

15   has procedurally defaulted a claim in state court, a federal court will not review the claim

16   unless the petitioner shows "cause and prejudice" for the failure to present the constitutional

17   issue to the state court, or makes a colorable showing of actual innocence. *See Gray v.*

18   *Netherland*, 518 U.S. 152, 162 (1996); *Sawyer v. Whitley*, 505 U.S. 333, 337 (1992); *Murray*

19   *v. Carrier*, 477 U.S. 478, 485 (1986).

20         **ii.     Grounds 2(b) and 2(c)**

21         Petitioner properly presented the ineffective assistance of counsel claims stated in

22   Grounds 2(b) (trial counsel failed to present DNA evidence) and 2(c) (trial counsel failed to

23   object to perjured testimony) in his First Rule 32 Petition. Accordingly, Ground 2(b) and

24   2(c) are properly exhausted and the Court will consider the merits of those claims.

25         **iii.    All other Grounds**

26         The remaining claims presented in Petitioner's federal Petition were presented to the

27   state court in either Petitioner's Second or Third Rule 32 Petitions. Both of these Rule 32

28   Petitions were summarily dismissed by the trial court as untimely and successive. Thus, the

1    claims were not presented in a procedural context in which their merits were considered. *See*

2    *Castille*, 489 U.S. at 351.  Petitioner is now precluded by Arizona Rules of Criminal

3    Procedure 32.2(a)(3) and 32.4 from obtaining relief on these claims in state court absent an

4    applicable exception, which Petitioner does not assert.[4]  *See* Ariz. R. Crim. P. 32.2(b);

5    32.1(d)-(h).

6         All of Petitioner's claims, with the exception of Grounds 2(b) and 2(c), are therefore

7    technically exhausted but procedurally defaulted, absent a showing of cause and prejudice

8    or a fundamental miscarriage of justice.  *See Coleman*, 501 U.S. at 749-50 (citations omitted;

9    internal quotation marks omitted); *Thomas v. Goldsmith*, 979 F.2d 746, 749 (9th Cir. 1992).

10   "'Cause' is a legitimate excuse for the default, and 'prejudice' is actual harm resulting from

11   the alleged constitutional violation." *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991)

12   (citing *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984)).  "To demonstrate cause,

13   a petitioner must show that some objective factor external to the defense impeded

14   [petitioner's] efforts to raise the claim in state court." *Bonin v. Calderon*, 77 F.3d 1155, 1158

15   (9th Cir.) (citations omitted; internal quotation marks omitted), *cert. denied*, 516 U.S. 1143

16   (1996).  To prove that a fundamental miscarriage of justice will result from the failure to

17   consider the claims raised in a habeas petition, a prisoner must make a factual showing of

18   actual innocence. *Schlup v. Delo*, 513 U.S. 298, 322-23 (1995); *Murray v. Carrier*, 477 U.S.

19   478,  496 (1986).  "To be credible, such a claim requires petitioner to support his allegations

20   of constitutional error with new reliable evidence . . . that was not presented at trial." *Schlup*,

21   513 U.S.  at  324.

22        Petitioner contends that any failure properly to present his claims in state court should

23   be excused due to the fact that Petitioner does not have access to a law library, legal materials

---

25    [4] Ariz. R. Crim. P. 32.1(f) recognizes an exception to preclusion of a claim where the

26   petitioner failed to file a notice of post-conviction relief or notice of appeal within the prescribed
     time frame.  In his Reply, Petitioner argues that the Maricopa County Sheriff's Office withheld
     his mail for 21 days, and that he missed the filing deadline for his First Rule 32 Petition as a

27   result.  Review of the record indicates, however, that Petitioner's First Rule 32 Petition was
     timely filed and considered by the trial court on the merits.  (Answer, Ex. I.)  Therefore, the

28   exception recognized in Ariz. R. Crim. P. 32.1(f) does not have any bearing on this case.

or paralegals.[5]  (Reply, pgs. 2-3.)  This claim, however, does not amount to a showing of cause and prejudice.  Petitioner's right of access to the courts requires the state to provide prisoners with access to a law library or other legal assistance only through the pleading stage of a habeas or civil rights action, including preparation of reply to answer, cross-claim or counterclaim. *See Cornett v. Donovan*, 51 F.3d 894, 898 (9th Cir. 1995).  In the present case, it is evident from the record that Petitioner was provided with the legal assistance necessary to file the appropriate pleadings in state and federal court.

Petitioner also contends that ADOC diagnosed him as Seriously Mentally Ill in 2003, and that he has only recently been downgraded from a "medical need to be medicated."  It is unclear whether Petitioner intends to allege that his mental illness is a cause for his failure properly to present claims in state court.  Even if Petitioner does intend to make such an allegation, the record before the Court does not support it.  Petitioner has not presented any evidence of mental illness.  The pleadings filed by Petitioner in state court indicate that Petitioner was able to clearly articulate the legal and factual bases for his claims in his subsequently-filed state court petitions.  Petitioner has admitted to receiving legal assistance from other prisoners and to having a paralegal review his pleadings before they were filed.  (Reply, pgs. 4-5.)  Petitioner has been able to file a 1983 action in this Court in addition to the pending federal habeas Petition.  *See Ortega v. Schriro*, United States District Court, District of Arizona, Case No. CV-07-2451-PHX-MHM (JCG).  It also appears that Petitioner has been able to successfully avail himself of the ADOC's internal grievance system.  Thus, there is nothing before the Court from which the Court can conclude that Petitioner's failure to properly present his claims in his First Rule 32 Petition, rather than his Second or Third Rule 32 Petitions, was the result of his alleged mental illness.  Accordingly, the Court recommends that these claims be dismissed for failure to exhaust.

**C.    Merits**

---

[5] In another section of his Reply, Petitioner complains that he had access to a paralegal, but that the paralegal only reviews pleadings to ensure that they are sufficient and does not draft the pleadings for the prisoners.  (Reply, pg. 4.)

1      On habeas review, a state court's findings of fact are entitled to a presumption of

2 correctness when fairly supported by the record. *Wainwright v. Witt*, 469 U.S. 412, 426

3 (1985). The presumption of correctness also applies to a state appellate court's findings of

4 fact. *Sumner v. Mata*, 449 U.S. 539, 546 (1981). The question presented in a state prisoner's

5 petition for a writ of habeas corpus is "whether the state proceedings satisfied due process."

6 *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991).

7      Federal courts may entertain a state prisoner's petition for habeas relief only on the

8 grounds that the prisoner's confinement violates the Constitution, laws, or treaties of the

9 United States. *Reed v. Farley*, 512 U.S. 339 (1994). General improprieties occurring in state

10 proceedings are cognizable only if they resulted in fundamental unfairness and consequently

11 violated the petitioner's Fourteenth Amendment right to due process. *Estelle v. McGuire*,

12 502 U.S. 62, 67-68 (1991)("[I]t is not the province of a federal habeas court to reexamine

13 state court determinations on state law questions."); *Bonin*, 77 F.3d at 1158. The Supreme

14 Court has held in the habeas context that "this Court will not review a question of federal law

15 decided by a state court if the decision of that court rests on a state law ground that is

16 independent of the federal question and adequate to support the judgment." *Coleman v.*

17 *Thompson,* 501 U.S. 722, 729 (1991). The provisions of the Anti-Terrorism and Effective

18 Death Penalty Act (AEDPA) govern this case and pose special burdens. *Chein v. Shumsky,*

19 373 F.3d 978, 983 (9th Cir.2004) (en banc). Under AEDPA, when reviewing a state criminal

20 conviction, a federal court may grant a writ of habeas corpus only if a state court proceeding

21 "(1) resulted in a decision that was contrary to, or involved an unreasonable application of,

22 clearly established Federal law, as determined by the Supreme Court of the United States;

23 or (2) resulted in a decision that was based on an unreasonable determination of the facts in

24 light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

25      Under § 2254(d)(1), a state court decision is  "contrary to" clearly established

26 Supreme Court precedent "if the state court applies a rule that contradicts the governing law

27 set forth" in Supreme Court cases or "if the state court confronts a set of facts that are

28 materially indistinguishable from" a Supreme Court decision but "nevertheless arrives at a

1   result different from" that precedent. *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000). A

2   state court decision is an unreasonable application of clearly established federal law if "the

3   state court identifies the correct governing legal principle" from a Supreme Court decision

4   "but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. In

5   considering whether a state court has unreasonably applied Supreme Court precedent, "a

6   federal habeas court may not issue the writ simply because that court concludes in its

7   independent judgment that the relevant state-court decision applied clearly established

8   federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

9   *Id.* at 411; *Bell v. Cone,* 535 U.S. 685, 694 (2002). In conducting habeas review, we

10  "presum[e] that state courts know and follow the law." *Woodford v. Visciotti,* 537 U.S. 19,

11  24 (2002).

12          **ii.     Ground 2(c)**

13          In his First Rule 32 Petition, Petitioner alleged that Detective Thompson testified on

14  cross-examination that the police did not test for blood under Petitioner's fingernails and did

15  not check Petitioner's hands for gun powder.  According to Petitioner, this testimony was

16  false because Russell Vossbrink testified that he worked in the Arizona Department of Public

17  Safety in the DNA unit and that he ran DNA tests on swabs taken from under Petitioner's

18  fingernails and on his skin where powder burns might appear.  In Ground 2(c), Petitioner

19  claims that trial counsel was ineffective because he failed to object to perjured testimony by

20  the detective.

21          In considering the Rule 32 petition, the trial court[6] applied the appropriate federal law

22  by relying on the legal standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984):

23  a defendant must demonstrate that counsel's performance was deficient and that he suffered

24  actual prejudice as a result of counsel's actions or inaction. (Answer, Ex. I, pg. 2.)

25

26

27          [6] When applying the AEDPA and reviewing whether a state court decision is contrary to
    federal law, this court must look to the state's last reasoned decision as the basis for its judgment.
28  *Avila v. Galaza*, 297 F.3d 911, 918 & n. 6 (9th Cir. 2002).

1    Although the trial court incorrectly concluded that Petitioner had failed to show that

2    any witness lied on the witness stand, the trial court's application of *Strickland* to the facts

3    before it was reasonable and the trial court was nonetheless correct in concluding that

4    Petitioner's counsel was effective.  Even if Petitioner's counsel failed to object to Detective

5    Thompson's false statement that no DNA tests were conducted (assuming, as Petitioner

6    alleges, that such a false statement was actually made), the failure to object was a reasonable

7    tactical decision, as there was nothing to gain by such impeachment.  At best, Petitioner's

8    trial counsel could have impeached Detective Thompson by presenting evidence that in fact,

9    DNA testing was conducted and that Petitioner did not have the victim's blood under his

10   fingernails or powder burns on his hands at the time of his arrest. This evidence would do

11   little to support an argument that Petitioner did not commit the crime, given that (1)

12   Petitioner admitted to "accidentally" shooting the victim while "messing around" with a gun,

13   (2) evidence demonstrated that Petitioner dragged the victim's body out of Petitioner's

14   residence to a vacant lot, blood was found on Petitioner's clothing, and police found boxes

15   of ammunition, a holster, a spent shell casing and the victim's backpack in Petitioner's

16   residence.  A tactical decision by counsel with which the Petitioner disagrees cannot form

17   the basis of a claim of ineffective assistance of counsel. *Wildman v. Johnson*, 261 F.3d 832,

18   839 (9th Cir. 2001). In addition, Petitioner has failed to demonstrate a reasonable probability

19   that, but for counsel's errors and omissions, the result of the proceeding would have been

20   different.  *Strickland*, 466 U.S. at 694.  Given the significant evidence demonstrating

21   Petitioner's guilt, the DNA evidence suggesting that Petitioner did not have the victim's

22   blood or powder burns on his person at the time of his arrest would not have changed the

23   outcome of the trial.

24   **i.       Ground 2(b)**

25

26

27

28

1    In Ground 2(b), Petitioner alleges that trial counsel was ineffective because he failed
2    to present DNA evidence.[7]

3    Although Petitioner argued in his First Rule 32 Petition that his trial counsel was
4    ineffective because he "fail[ed] to bring up that DNA was took" (Answer, Ex. F, pg. 8), the
5    trial court did not consider these factual allegations in reviewing Petitioner's multifaceted
6    claim for ineffective assistance of counsel.   Where a state court gives no reasoned
7    explanation for its decision on a petitioner's federal claim, this Court reviews the record
8    before it to determine whether the state court's denial of that claim constituted an
9    unreasonable application of clearly established federal law. *See Greene v. Lambert*, 288 F.3d
10   1081, 1088-89 (9th Cir. 2002).  In this case, federal law mandates that, in order to prevail
11   upon a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's
12   performance was deficient and that he suffered actual prejudice as a result of counsel's
13   actions or inaction. *See Strickland*, 466 U.S. at 668.

14   Petitioner does not explain what the DNA evidence would have proven or how it
15   would have aided his defense.   Assuming that the DNA evidence at issue is the same
16   evidence discussed in Ground 2(c), trial counsel was not ineffective for failure to obtain or
17   present the DNA evidence. At best, the DNA evidence might have suggested that Petitioner
18   did not have the victim's blood under his fingernails or powder burns on his hands at the time
19   of his arrest. As stated above, however, the facts of this case indicate that Petitioner admitted
20   to shooting the victim and the state presented significant physical evidence linking Petitioner
21   to the crime.   Given this evidence and Petitioner's admission of the crime, the jury was
22   confronted with significant proof of Petitioner's guilt even if Petitioner did not have blood
23   or powder burns on his person when he was arrested.   Thus Petitioner has failed to
24   demonstrate that his counsel was deficient or that Petitioner suffered actual prejudice as
25   required by *Strickland*.

26

27   [7] This claim is somewhat at odds with Petitioner's statement, concerning Ground 2(c), that Russell Vossbrink testified that he worked in the Arizona Department of Public Safety in the DNA unit and that he ran DNA tests on swabs taken from under Petitioner's fingernails and on
28   his skin where powder burns might appear.

1

**RECOMMENDATION**

2        Based on the foregoing, the Magistrate Judge recommends that the District Court enter

3   an order DISMISSING WITH PREJUDICE the Petition for Writ of Habeas Corpus.

4        Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within

5   ten days of being served with a copy of the Report and Recommendation.  If objections are

6   not timely filed, they may be deemed waived. If objections are filed, the parties should use

7   the following case number: **CV-07-2063-PHX-MHM**.

8        The Clerk is directed to mail a copy of the Report and Recommendation to Petitioner

9   and counsel for Respondents.

10       DATED this 11th day of March, 2008.

11

12

13

14

15                                   _____

16                                        Jennifer C. Guerin
                                     United States Magistrate Judge

17

18

19

20

21

22

23

24

25

26

27

28